**IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF ARKANSAS
EASTERN DIVISION**

**SAMUEL SMITH, JR.**                                                                                         **PLAINTIFF**

**V.                         CASE NO.: 2:12CV00105 BD**

**CAROLYN W. COLVIN, Acting Commissioner,
Social Security Administration[1]**                                                              **DEFENDANT**

**MEMORANDUM OPINION AND ORDER**

Plaintiff Samuel Smith, Jr., appeals the final decision of the Commissioner of the Social Security Administration (the "Commissioner") denying his claim for Supplemental Security Income ("SSI") benefits under Title XVI of the Social Security Act (the "Act"). For reasons set out below, the decision of the Commissioner is AFFIRMED.

**I.      Background**

On September 25, 2008, Mr. Smith filed for SSI, alleging disability beginning the same date, due to memory loss, back problems, heart attacks, high blood pressure, two heart surgeries, and depression. (Tr. 107, 116) Mr. Smith's claims were denied initially and upon reconsideration. At his request, an Administrative Law Judge ("ALJ") held a hearing on August 5, 2010, at which Mr. Smith appeared and testified telephonically.[2] (Tr. 23-41) Mr. Smith's attorney appeared in person. (Tr. 23)

---

[1] On February 14, 2013, Carolyn W. Colvin became the Acting Commissioner of the Social Security Administration. She has been substituted for named Defendant Michael J. Astrue under Fed.R.Civ.P. 25.

[2] Mr. Smith could not attend in person because he was incarcerated at the time of the hearing. (Tr. 34, 75)

The ALJ issued a decision on November 10, 2010, finding that Mr. Smith was not disabled under the Act. (Tr. 11-18) On May 24, 2012, the Appeals Council denied Mr. Smith's request for review, making the ALJ's decision the Commissioner's final decision. (Tr. 2-6)

Mr. Smith was fifty-three years old at the time of the hearing. (Tr. 28) He had graduated high school on time and had no history of learning disabilities. (Tr. 28, 394) He had been married and divorced once, and had four adult children. (Tr. 395)

Mr. Smith described himself as homeless, but was able to receive medical treatment through the Department of Veterans Affairs ("VA"). (Tr. 30, 31, 34, 395) He had not worked in the ten to twelve years preceding the hearing. (Tr. 29)

Mr. Smith had been in and out of prison. (Tr. 29) He estimated that he had been jailed approximately twenty-five times, and had served about eight separate prison terms. (Tr. 33) According to Mr. Smith, this filing was his third application for disability. (Tr. 394)

## II.     Decision of the Administrative Law Judge

The ALJ followed the required sequential analysis to determine: (1) whether the claimant was engaged in substantial gainful activity; (2) if not, whether the claimant had a severe impairment; (3) if so, whether the impairment (or combination of impairments) met or equaled a listed impairment; and (4) if not, whether the impairment (or combination of impairments) prevented the claimant from performing past relevant work;

and (5) if so, whether the impairment (or combination of impairments) prevented the claimant from performing any other jobs available in significant numbers in the national economy. 20 C.F.R. § 416.920(a)-(g) (2005).

The ALJ found that Mr. Smith had not engaged in substantial gainful activity since his alleged disability onset date. (Tr. 13) And he found that Mr. Smith had the following severe impairments: coronary artery disease status post percutaneous coronary intervention, hypertension, and degenerative disc disease of the lumbar spine.[3] (Tr. 13) The ALJ also found, however, that Mr. Smith did not have an impairment or combination of impairments meeting or equaling an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1 (20 C.F.R. § 416.926). (Tr. 14)

The ALJ determined that Mr. Smith had the residual functional capacity ("RFC") to perform a full range of medium work, where he could lift and carry 50 pounds occasionally and 25 pounds frequently, and he could sit for 6 hours in an 8-hour workday, and stand or walk for 6 hours in an 8-hour workday. (Tr. 14-17)

Using the Medical-Vocational Guidelines, the ALJ determined that a finding of "not disabled" was directed by Medical-Vocational Rule 203.21. (Tr. 18) Accordingly, the ALJ found that Mr. Smith was not disabled. (Tr. 18)

---

[3] The ALJ found that Mr. Smith's alleged headaches, depression, and osteoarthritis were "non-severe." (Tr. 13-14)

**III.** <u>**Analysis**</u>

  A. *Standard of Review*

In reviewing the Commissioner's decision, this Court must determine whether there is substantial evidence in the record as a whole to support the decision. *Boettcher v. Astrue*, 652 F.3d 860, 863 (8th Cir. 2011); 42 U.S.C. § 405(g). Substantial evidence is "less than a preponderance, but sufficient for reasonable minds to find it adequate to support the decision." *Id*. (citing *Guilliams v. Barnhart*, 393 F.3d 798, 801 (8th Cir. 2005)).

In reviewing the record as a whole, the Court must consider both evidence that detracts from the Commissioner's decision and evidence that supports the decision; but, the decision cannot be reversed, "simply because some evidence may support the opposite conclusion." *Id*. (citing *Pelkey v. Barnhart*, 433 F.3d 575, 578 (8th Cir. 2006)).

  B. *Plaintiff's Arguments for Reversal*

Mr. Smith claims the ALJ's decision at Step five was not supported by substantial evidence because: (1) the ALJ erred by relying on the Medical-Vocational Guidelines when Mr. Smith had nonexertional impairments; and (2) the ALJ wrongly disregarded the opinion of a consulting physician. (#13)

  C. *The Medical-Vocational Guidelines*

Mr. Smith claims that the ALJ erred by relying on the Medical-Vocational Guidelines ("the Guidelines") rather than hearing testimony from a vocational expert at

step five of the sequential evaluation process. (#13, pp. 9-12) This claim is based on Mr. Smith's alleged dementia and borderline intellectual functioning. The Commissioner responds that Mr. Smith failed to raise a claim related to dementia or borderline intellectual functioning until 13 months after the ALJ's decision. (#14, pp. 5-9) The Commissioner also states that Mr. Smith did not meet his burden of proving he had a severe mental impairment. (#14, pp. 9-12)

In his application for SSI, Mr. Smith alleged memory loss and chronic depression as conditions that could cause mental (nonexertional) limitations in his ability to work. (Tr. 116) When asked by his attorney to list his impairments, Mr. Smith did not provide a single mental impairment. (Tr. 36) It appears, as stated by the Commissioner, that Mr. Smith did not raise an issue with dementia or borderline intellectual functioning until well after the ALJ's decision. (Tr. 160)

The ALJ noted that Mr. Smith had neither sought nor received any treatment for depression or memory loss, the only two mental conditions listed on his application. (Tr. 13) Due to the "lack of evidence," the ALJ referred Mr. Smith for a mental diagnostic evaluation. (Tr. 13) Kenneth B. Jones, Ph.D., completed Mr. Smith's consultative mental diagnostic evaluation on December 10, 2008. (Tr. 394-398) Dr. Jones diagnosed Mr.

Smith with substance abuse, reportedly in remission.[4]  (Tr. 397)  Dr. Jones could not rule out dementia or borderline intellectual functioning.  (Tr. 397)

As the record stands, no physician ever diagnosed Mr. Smith with dementia or borderline intellectual functioning, however.  While two years before the administrative hearing, Dr. Jones noted that he could not rule out dementia or borderline intellectual functioning, a mental residual functional capacity assessment and a psychiatric review, both completed shortly after Dr. Jones's evaluation, found no more than moderate limitations in mental functioning.  (Tr. 399-416)  The assessments specifically noted that Mr. Smith could perform unskilled work.  (Tr. 401, 415)  In addition to these findings and a lack of diagnosis or treatment for either dementia or borderline intellectual functioning, it does not appear that Mr. Smith ever requested or received any additional testing or evaluations in the twenty months between the assessments and the administrative hearing.  Under these circumstances, this Court cannot fault the ALJ for determining that these two undiagnosed mental impairments did not significantly limit Mr. Smith's ability to perform unskilled work activities.

The record simply does not support a finding of either severe dementia or borderline intellectual functioning.  Mr. Smith graduated high school on time and had no history of learning disabilities.  (Tr. 28, 394)  At the administrative hearing, he did not

---

[4] Dr. Jones suspected that Mr. Smith was then currently using cocaine or alcohol. (Tr. 395)  The medical record confirms that Mr. Smith used cocaine or crack cocaine within two months of the evaluation. (Tr. 347, 348, 367, 370, 372)

allege any mental impairments.  (Tr. 36)  Mr. Smith had no problem calculating his prison release date.  (Tr. 32)  He even corrected the ALJ about how the Arkansas Department of Correction release dates actually work.  (Tr. 32-33)  Absent Dr. Jones's comment that he could not rule out dementia or borderline intellectual functioning, the record does not contain any evidence of either alleged impairment.  Despite getting regular treatment at the VA, there are no VA medical records that evidence dementia or borderline intellectual functioning.

Mr. Smith argues the ALJ should have further developed the record.  The ALJ sent Mr. Smith to one consultative mental diagnostic evaluation.  (Tr. 394-398)  The ALJ did not have a duty to further develop the record regarding two potential, undiagnosed impairments, that Mr. Smith did not even allege formed the basis of his disability.  He also fell well short of his burden of proving that dementia or borderline intellectual functioning were severe impairments.  See *King v. Astrue*, 564 F.3d 978, 979 fn. 2 (8th Cir. 2009) (a claimant has the burden of proof until after the analysis reaches step five).

  D. *Opinion of Consulting Physician*

Mr. Smith argues that the ALJ wrongly disregarded the opinion of consulting physician Joseph M. Patterson, M.D.  (#13, pp. 12-13)  Dr. Patterson completed a consultative general physical examination on November 24, 2008.  (Tr. 388-392)  Although almost illegible, Dr. Patterson appeared to assess Mr. Smith with moderately

severe exertional limitations. (Tr. 392) Dr. Patterson did not specify what those limitations were, however.

Mr. Smith failed to allege any specific functional limitations that Dr. Patterson's assessment would support. (#13, pp. 12-13) Mr. Smith noted positive straight leg raises and narrowing of his lumbar spine at L5-S1. (#13, p. 12) So it would appear his argument involves potential limitations due to his degenerative disc disease. But Dr. Patterson's assessment also showed that Mr. Smith had full range of motion in all extremities and his spine. (Tr. 390) Mr. Smith did not have any muscle spasms, weakness, or atrophy. (Tr. 391) He had positive straight leg raises on the left side only, but no joint deformities, instability, ankylosis, or contractures. (Tr. 391) Mr. Smith had normal gait, coordination, proprioception, and tandem walk. (Tr. 391) His Romberg test was negative, with no tremor, cogwheel rigidity, or bradykinesis. Mr. Smith could walk heel to toe, without assistive devices, and could squat and arise from a squatting position. (Tr. 391) He also had no limitation in limb functioning. (Tr. 391)

The opinion of a consulting physician based upon a single examination generally receives little weight. *Singh v. Apfel*, 222 F.3d 448, 452 (8th Cir. 2000). Further, the ALJ can reject the conclusion of any medical expert if it is inconsistent with the record as a whole. *Finch v. Astrue*, 547 F.3d 933, 936 (8th Cir. 2008). The lack of actual limitations noted in Dr. Patterson's assessment was inconsistent with his finding of moderately

severe exertional limitations. Even if the ALJ had given this finding weight, the finding does not provide a single limitation that would prevent medium work.

### IV. Conclusion

The Court has reviewed all of the evidence in the record, including the objective medical evidence, the opinions of physicians, and the hearing transcript. There is sufficient evidence in the record as a whole to support the Commissioner's determination that Samuel Smith, Jr. retained the residual functional capacity to perform jobs existing in significant numbers in the economy.

Accordingly, his appeal is DENIED, and the Clerk of Court is directed to close the case, this 23rd day of August, 2013.

```
                                    _____
                                    UNITED STATES MAGISTRATE JUDGE
```